IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOSEPH OLAN, | § | |
| Plaintiff, | § § § | |
| v. | § § | Civil Action No. 20-487 |
| UVALDE CONSOLIDATED ISD, | § § | |
| Defendant. | § § | |

**PLAINTIFF JOSEPH OLAN'S ORIGINAL COMPLAINT
AND JURY DEMAND**

Plaintiff Joseph Olan was employed by Uvalde Consolidated ISD. This is an action for disability discrimination under the Americans with Disabilities Act (ADA) and the Texas Commission on Human Rights Act (TCHRA) as well as for violations of the Family and Medical Leave Act (FMLA).

**Parties**

1. Plaintiff Joseph Olan is an individual residing at 47 Briar Crown, Uvalde, Texas 78801. He may be served with papers in this case through the undersigned counsel.

2. Defendant Uvalde Consolidated ISD is a school district organized under the laws of the State of Texas. It maintains its principal place of business at 1000 N. Getty St, Uvalde, Texas 78801. It may be served with process through its Superintendent, Hal Harrell, ed. D., at 1000 N. Getty St., Uvalde, Texas 78801.

1

## Jurisdiction and Venue

3.     The Court possesses subject matter jurisdiction over this case because Plaintiff's claims are brought under federal statutes, the ADA and the FMLA. The Court possesses supplemental jurisdiction over Plaintiff's claim under the TCHRA. The Court possesses personal jurisdiction over Defendant because Defendant constantly conducts business in Texas and maintains offices in Texas. Venue is proper in the Western District of Texas because all of the events giving rise to Plaintiff's claims occurred within the geographic confines of the San Antonio Division.

## Factual Background

4.     He is an Army veteran and is classified as seventy percent disabled, primarily due to conditions related to his lumbar spine. He has undergone several back surgeries over the years.

5.     Plaintiff commenced employment with Defendant in August 2017. Plaintiff was hired as the Academic Dean at Uvalde High School (UHS)

6.     As evidenced by his outstanding performance evaluations, Plaintiff never had any performance issues while working for Defendant. He even received the award "employee of the month" for the whole district in December of 2017.

7.     On November 10, 2018, Plaintiff woke up with excruciating back pain. Prior to this time, he had never requested a leave from Defendant. That same day, he went to the hospital in Uvalde and was admitted until November 14, 2018. In December, he received continuing treatment at the VA in Kerrville, where he was advised that he may require surgery to relieve the stenosis that was causing him intense pain. Plaintiff informed Defendant that he may need surgery. He started using a cane at work to ambulate.

8. In the same month, the Deputy Assistant Superintendent, Mr. Rodriguez, warned Plaintiff, "You need to take care of yourself. Any of us can be replaced." He was referencing my cane and my health situation. Plaintiff took this to mean that his disability alone—and not my work performance—could cause him to be replaced.

9. Between mid- November 2018 and March 2019, Plaintiff was on intermittent FMLA. His surgery was eventually scheduled for March 28, 2019, and he fully informed Defendant's management of his need for surgery and when he expected to be out. Plaintiff also requested continuous FMLA leave for his surgery and convalescence.

10. On March 19, 2019, Plaintiff had a meeting with HR Asst. Superintendent Ms. Reavis and the superintendent, Dr. Harrell, principally to continue discussing unanswered questions that Plaintiff needed answered by administration in order to prepare the master schedule and other issues that were affecting academics for the current and upcoming school year. Plaintiff asked Dr. Harrell whether he (Plaintiff) would be returning to his position as academic dean. This decision should have been made by this time, but telling, Dr. Harrell deflected and responded that he was not sure, which Plaintiff took as an indication that he would not likely be reappointed to this position. Needing to remain employed because he desperately needed health insurance, Plaintiff identified other position he would be willing to take, although he clearly wanted to remain in the academic dean position if allowed to do so. Dr. Harrell was again noncommittal, stating only that he would keep them "in mind." Plaintiff left the meeting firmly believing that he would not be reappointed as academic dean for the following school year and that he would likely be transferred to some position in the district (just like the Principal, Ms. Sandoval and even the Vice principal, Ms. Cardenas).

11. On March 20, 2019, there was a faculty meeting at the high school. At the end of the meeting, Plaintiff addressed the staff that day—as he believed it might be the last time he saw the staff as a group since he was scheduled to have surgery the following week (March 28th). Plaintiff told the assembled staff that he was about to have major back surgery and that after his surgery, he would not likely be returning as academic dean the following school year because he would likely be transferred to another position. Plaintiff thanked the staff for their hard work during the school year and told them that he would remain in touch. At no time in this meeting did Plaintiff advise the other staff members that he was not returning the following year or that word got back to Dr. Harrell regarding Plaintiff's remarks at the faculty meeting.

12. On the following day, March 21, 2019, Plaintiff was summoned to a meeting with Mr. Harrell and other members of administration. Plaintiff was vigorously questioned why he stated in the meeting that his contract was not being renewed. Plaintiff denied stating such, and explained he had informed the staff that he was not likely returning as academic dean. Plaintiff stated that he was simply trying to be transparent, as Mr. Harrell had refused to confirm that he would be returning as the academic dean. Tellingly, Ms. Beth Reavis, the Assistant Superintendent for Human Resources, proposed that Plaintiff rectify the situation by announcing that he was not returning the next school year due to his health. Plaintiff protested. Finally, Plaintiff was instructed to re-address the staff and advise them that he asked to transfer to another position.

13. Plaintiff was then asked to readdress the staff again and to let them know that he was not being removed as academic dean. Plaintiff was perplexed because, just two days before, Mr. Harrell had flatly refused to confirm that Plaintiff would be returning as academic dean.

14. Shortly after my meeting with the superintendent, Plaintiff went to see the school nurse because he felt ill and believed his blood pressure was high, likely due to being off his pain

4

medications in anticipation of surgery. The nurse confirmed that Plaintiff's blood pressure was high and sent him home. Consequently, Plaintiff did not address the staff that day. However, before leaving campus, Plaintiff sent Ms. Sandoval's administrative assistant (Ms. Yoli) an email for Ms. Sandoval's approval to be sent to the whole staff. Plaintiff wrote the email to appease Mr. Harrell and Ms. Reavis. This email stated that he had met with Mr. Harrell and Ms. Reavis to discuss his position and the possibility of transferring to another position with the District, including the possibility of serving as a teacher or perhaps another position.

15. Plaintiff learned from co-workers that Mr. Harrell conducted a meeting with the whole staff that same day to discuss the various timeframes when the District informs employees regarding renewal, nonrenewal, and transfers. Plaintiff went on continuous FMLA in preparation for his surgery.

16. Plaintiff underwent his surgery as planned on March 28. Then, on April 12, while he remained on FMLA leave, Plaintiff received notice from Dr. Harrell indicating Dr. Harrell's intention to recommend termination of Plaintiff's employment effective at the end of the school year. On April 24, Mr. Harrell sent Plaintiff an email stating that "it was in the best interest of the district to recommend termination of your probationary contract for reasons including but not limited to your inability to work with supervisors and co-workers" and informing Plaintiff that the Board had voted unanimously on April 15 to terminate Plaintiff's contract "for good cause." In point of fact, as the evidence clearly establishes, Plaintiff had no trouble working with supervisors and co-workers. On the contrary, Plaintiff had been repeatedly praised not only for his hard work and diligence but also for his ability to get along with others.

17.     While he was out on FMLA, Plaintiff received emails instructing him to perform work on behalf of Defendant even though he was on medical leave and even though he had already been informed that his employment had been terminated.

### First Cause of Action: Disability Discrimination and Retaliation in Violation of the ADA and TCHRA

18.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 17 supra.

19.     Defendant is an employer within the meaning of the ADA and TCHRA in that in each year relevant to this lawsuit, it has employed more than 15 employees in 20 or more calendar weeks. Likewise, Plaintiff was an employee of Defendant within the meaning of the ADA and TCHRA.

20.     Plaintiff suffers from disabilities relating to his back and spine. These conditions substantially limit Plaintiff in various major life activities, including but not limited to walking, standing, lifting, bending, caring for himself, and working, as well as major bodily functions, including the functioning of his musculoskeletal system. Despite these limitations, Plaintiff is a qualified individual and was fully capable of performing her job with Defendant. Over the course of her employment, Plaintiff repeatedly informed Defendant of his disability and actually submitted FMLA paperwork so that he could be reasonably accommodated in the form intermittent and then continuous leave due to his disability.

21.     On or about April 9, 2019, Defendant gave Plaintiff notice that it intended to recommend his termination. On April 24, 2019, Defendant was advised that the Board had approved Mr. Harrell's recommendation to terminate Plaintiff's employment effective at the end of the school year. Defendant, through Mr. Harrell, provided Plaintiff with a nonsensical reason for termination that was in fact a pretext for unlawful disability discrimination and retaliation for having requested reasonable accommodation in the form of leaves of absence for his disability.

22. By discharging Plaintiff under these circumstances, Defendant unlawfully discriminated against Plaintiff because of his disability and because he had requested reasonable accommodation in the form of intermittent and continuous leaves of absence.

23. As a result of Defendant's illegal discrimination, Plaintiff has suffered, and will likely continue to suffer in the future, lost wages and benefits. Additionally, Defendant's illegal discrimination against Plaintiff has caused Plaintiff emotional distress, mental anguish, humiliation, embarrassment, damage to reputation, and loss of enjoyment of life. Plaintiff also sues to recover damages for these injuries. Moreover, because Plaintiff has had to retain legal counsel to vindicate his rights under the ADA, Plaintiff is entitled to an award of attorney fees and costs of court.

24. Plaintiff has completed all administrative prerequisites to filing this suit. In this regard, he timely dual-filed his charge of discrimination with the EEOC and Texas Workforce Commission—Civil Rights Division. He has filed this lawsuit within 90 days of receiving his Right to Sue from the EEOC and within two years of dual-filing his charge.

**Second Cause of Action: Violations of FMLA (interference and retaliation)**

25. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 17 supra.

26. In addition, or in the alternative, Plaintiff pleads that Defendant has violated his rights under the Family and Medical Leave Act.

27. Defendant is an employer within the meaning of the FMLA in that it employs more than 50 employees within a 75-mile radius of the location where Plaintiff worked for Defendant. Plaintiff was an eligible employee under the FMLA in that, at the time he requested FMLA as described above, he had been employed for more than a year and had worked in excess of 1250 hours during the year preceding the commencement of his FMLA leave.

28. Plaintiff properly requested FMLA—first intermittent leave and then continuous leave. Plaintiff completed all paperwork necessary for taking FMLA leave. Prior to his termination from employment, Plaintiff went on intermittent FMLA and then on continuous FMLA leave for his spinal surgery. However, Plaintiff was not allowed to complete his FMLA leave, as he was terminated on April 15 effective the end of the school year.

29. Plaintiff contends that Defendant unlawfully interfered with his right to FMLA leave by terminating his employment for no valid reason prior to Plaintiff completing his FMLA leave. In fact, the reason given by Defendant for Plaintiff's termination was nonsensical and pretextual.

30. Pleading in addition, or in the alternative, Plaintiff contends that Defendant discharged Plaintiff in retaliation for requesting and then taking FMLA-qualifying leave. Plaintiff pleads that Defendant's stated reason for discharging Plaintiff was a pretext for unlawful interference and retaliation with Plaintiff's FMLA rights and for having taken FMLA-qualifying leave.

**Jury Demand**

31. Plaintiff demands a trial by jury.

**Conclusion and Prayer**

32. Plaintiff prays that upon final judgment she be awarded the following:

a. Lost wages and benefits in the past and in the future;

b. Compensatory damages for emotional distress, mental anguish, humiliation, embarrassment, damage to reputation; and loss of enjoyment of life (ADA/TCHRA claims only);

8

c.  Exemplary damages;

d.  Liquidated damages (FMLA claims only)

e.  Attorney fees;

f.  Costs of court;

g.  Pre- and post-judgment interest; and

h.  All other relief to which Plaintiff is entitled.

Respectfully submitted,

/s/ Michael V. Galo, Jr.
Michael V. Galo, Jr.
State Bar No. 00790734
Federal Bar No. 19048
GALO LAW FIRM, P.C.
4230 Gardendale, Bldg 401
San Antonio, Texas 78229
Telephone: 210.616.9800
Facsimile: 210.616.9898
Email: mgalo@galolaw.com
ATTORNEY FOR PLAINTIFF
JOSEPH OLAN