IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JOSEPH OLAN, §
§
    *Plaintiff,* §      SA-20-CV-00487-ESC
§
vs. §
§
UVALDE CONSOLIDATED ISD, §
§
    *Defendant.* §

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Before the Court in the above-styled and numbered cause of action is Defendant Uvalde

Consolidated Independent School District's Motion for Summary Judgment [#24].  The Court

has jurisdiction over this case pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under

federal law.  The undersigned has authority to enter this Order as both parties have consented to

proceed before a magistrate judge [#6, #7, #8].  *See* 28 U.S.C. § 636(c)(1).  In rendering this

opinion, the Court has also considered Plaintiff's response [#27] and Defendant's reply [#28].

For the reasons set forth below, the Court will **deny** Defendant's motion for summary judgment.

## I.  Background

This is an action arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §

12101, *et seq.*; Chapter 21 of the Texas Labor Code, Tex. Lab. Code § 21.001, *et seq.*;[1] and the

Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*  Plaintiff Joseph Olan filed

this lawsuit against his former employer Uvalde Consolidated ISD (hereinafter "UCISD") on

---

[1]  Chapter 21 of the Texas Labor Code was formerly known as the Texas Commission on Human Rights Act ("TCHRA").  *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 437 (5th Cir. 2012). The parties refer to Plaintiff's state law claim as asserting a violation of the TCHRA throughout their briefing.  The Court will refer to this claim as arising under Chapter 21 of the Texas Labor Code.

April 20, 2020, asserting claims of disability discrimination and retaliation under the ADA and Chapter 21 of the Texas Labor Code (Count I) and interference and retaliation under the FMLA (Count II).  Defendant has moved for summary judgment on all claims and has objected and moved to strike certain evidence filed by Plaintiff in support of his response in opposition to Defendant's motion.

## II. Objections and Motion to Strike

Embedded in Defendant's reply is a motion to strike certain evidence submitted by Plaintiff.  (*See* Mot. to Strike [#28], at ¶¶ 1–8.)  The Court has considered Plaintiff's response to the objections [#27] and Defendant's reply in support [#30].  In resolving the motion for summary judgment, the Court has not relied on any of the disputed evidence except for Plaintiff's statements summarizing the remarks of the nurse of Uvalde High School, which are addressed *infra*.  The Court notes, however, that its ruling on the summary judgment motion would have been the same even without the testimony regarding the nurse's statements.  The Court will therefore deny Defendant's motion to strike and overrule Defendant's objections as to Plaintiff's summary of the nurse's statements and dismiss the remainder of Defendant's motion to strike as moot.

## III.  Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  A dispute is genuine only if the evidence is such

2

that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174. However, if the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## IV. Summary Judgment Record

Unless otherwise noted, the following represents the undisputed facts contained in the summary-judgment record.

Olan commenced his employment with UCISD in August 2017 as the Academic Dean at Uvalde High School (hereinafter "UHS").  (Compl. [#1], at ¶ 5; Answer [#4], at ¶ 5.)   As Academic Dean, Olan's direct supervisor was UHS campus principal, Elizabeth Sandoval.  (Olan Dep. [#24-3], at 23:7–11.)  Olan was employed pursuant to a probationary contract for the 2017–2018 school year, and the Board of Trustees renewed his contract for the following 2018–2019 school year.  (Reavis Aff. [#24-8], at ¶ 2.)  This 12-month contract ran from July 1, 2018, to June 30, 2019.  (*Id.*; Contract [#24-9], at 1–2.)

In mid-November 2018, Olan was hospitalized for back pain.  (Compl. [#1], at ¶ 7; Mot. for Summ J. [#24], at ¶ 5; Olan Decl. [#27-1], at ¶ 5.)  Olan, a veteran of the United States Army, has a lumbar spine condition related to a 2003 service-connected injury and had previously undergone two back surgeries related to this injury in 2005.  (Olan Decl. [#27-1], at ¶ 1.)  UCISD's Human Resources Department provided Olan with written notice of his rights and responsibilities under the FMLA, which informed Olan of his eligibility for FMLA leave beginning November 12, 2018, for his serious health condition.  (Reavis Aff. [#24-8], at ¶ 3; Notice [#24-22] at 1–6.)

Olan's health care provider certified his serious health condition for FMLA eligibility on November 28, 2018, which indicated that Olan had already been in the hospital for several days and would need additional intermittent leave.  (Reavis Aff. [#24-8], at ¶ 4.)  The certification further indicated that the end date of Olan's FMLA leave could not be estimated, as he required further diagnostics and possible surgery.  (*Id.*)  Between November 2018 and March 2019, Olan was on intermittent FMLA leave and began using a cane at work.  (Compl. [#1], at ¶ 9; Answer [#4], at ¶ 9; Reavis Aff. [#24-8], at ¶ 4; Olan Decl. [#27-1], at ¶ 8.)

4

While Olan was on intermittent FLMA leave, his neurosurgeon confirmed his need for back surgery, and the surgery was scheduled for March 28, 2019.  (Compl. [#1], at ¶ 9; Answer [#4], at ¶ 9; Olan Dep. [#24-3], at 40:2–20.)  Olan informed UCISD's management of his need for surgery, when he expected to be out on leave, and requested continuous FMLA leave for his surgery and convalescence, which was estimated by his provider to require a three-month leave of absence from work.  (Compl. [#1], at ¶ 9; Answer [#4], at ¶ 9; Olan Dep. [#24-3], at 40:21–41:16, Olan Decl. [#27-1], at ¶ 7.)

In March 2019, shortly before his surgery, Plaintiff contacted Beth Reavis, Assistant Superintendent for Human Resources, and requested a meeting with Ms. Reavis and Superintendent Dr. Hal Harrell.  (Olan Dep. [#24-3], at 33:3–25, 42:13–43:9; Olan Decl. [#27-1], at ¶ 9; Reavis Aff. [#24-8], at ¶¶ 5–6; Harrell Statement [#24-13], at 1–2.)  The meeting was held on March 19, 2019.  (Reavis Aff. [#24-8], at ¶¶ 5–6; Harrell Statement [#24-13], at 1–2.)

The purpose of the meeting and what Plaintiff, Ms. Reavis, and Dr. Harrell each said at the meeting are contested.  (Olan Decl. [#27-1], at ¶ 9.)  According to UCISD, Olan called the meeting to request a transfer to another position.  (Reavis Aff. [#24-8], at ¶ 6; Harrell Statement [#24-13], at 1–2; Harrell Dep. [#24-6], at 21:20–22:17.)  UCISD's position is that Olan expressly informed   Dr. Harrell and Ms. Reavis at the meeting that he did not want to be the Academic Dean at UHS for the following year because he did not want to be under the leadership of Mr. Rodriguez, Deputy Superintendent for Curriculum and Instruction.  (Reavis Aff. [#24-8], at ¶ 6; Harrell Statement [#24-13], at 1–2; Harrell Dep. [#24-6], at 21:20–22:17.)  According to Dr. Harrell and Ms. Reavis, Olan suggested he return the following year as a teacher, and the meeting ended with the shared understanding that the likely result would be Olan working for

UCISD for the following school year in a teaching capacity.  (Reavis Aff. [#24-8], at ¶ 6; Harrell Statement [#24-13], at 1–2.)

Olan claims this account of the meeting and its purpose is false and that he requested the meeting to discuss his concerns about various curriculum issues at UHS and to address rumors he had heard that he might be receiving a transfer to another position for the following school year.  (Olan Decl. [#27-1], at ¶¶ 10, 12.)  At the time Olan requested the meeting, he had recently heard that his principal, Ms. Sandoval, was being reassigned to another position.  (Olan Decl. [#27-1], at ¶¶ 10, 12.)  Olan maintains that during the meeting he never expressed a desire to be transferred out of his position as Academic Dean or to be transferred from Mr. Rodriguez's supervision, as they had a very good personal and professional relationship. (Olan Dep. [#24-3], at 37:3–20; Olan Decl. [#27-1], at ¶ 12.)   Olan did, however, testify that, in light of the rumors about his possible transfer, he wanted to be able to provide input about other positions he would enjoy within UCISD and did so at the meeting.  (Olan Dep. [#24-3], at 37:3–20.)

The following day, Olan attended a regularly scheduled faculty meeting at UHS—his last faculty meeting before his scheduled back surgery and FMLA leave.  (Olan Dep. [#24-3], at 43:17–25; Olan Decl. [#27-1], at ¶ 14.)   At the meeting, Olan informed the faculty that he expected to be reassigned from his position as Academic Dean but would be returning to UCISD in another position after his back surgery and recovery.  (Olan Dep. [#24-3], at 44:5–17; Olan Decl. [#27-1], at ¶ 14; Mireles Decl. [#27-9], at 2; Mahler Decl. [#27-10], at 2.)  Olan conceded in his deposition that Dr. Harrell and Ms. Reavis had not promised him this expressly but it could be inferred from their conversations at the meeting, including Dr. Harrell's refusal to confirm that he would still have his position as Academic Dean upon his return from FMLA leave.  (Olan Dep. [#24-3], at 44:17–45:3, 50:9–17.)

Ms. Reavis heard about Olan's announcement during the faculty meeting and quickly scheduled another meeting with Olan, Dr. Harrell, and Ms. Sandoval for that afternoon. (Reavis Aff. [#24-8], at ¶ 7.) At the meeting, Olan was instructed to call an "emergency" follow up meeting with staff to correct his alleged misrepresentations at the faculty meeting and advise the faculty that he had asked to be transferred to a different position. (Olan Dep. [#24-3], at 49:4–50:4; Reavis Aff. [#24-8], at ¶ 8.) Dr. Harrell and Ms. Reavis planned to attend the meeting to ensure that this information was relayed. (Olan Dep. [#24-3], at 52:17-23; Reavis Aff. [#24-8], at ¶ 8.)

According to Olan, he felt ill later that afternoon and was suffering from extreme back pain and high blood pressure. (Olan Decl. [#27-1], at ¶ 18.) After visiting the school nurse and informing Ms. Sandoval of his condition, Olan left school for the day. (*Id.*) According to Olan, the school nurse recommended that he to go home and informed him that she would inform HR of her recommendation.[2] Instead of holding the "emergency" meeting as directed, Olan drafted an email to be forwarded to the faculty by Ms. Sandoval. (Reavis Aff. [#24-8], at ¶ 8; Harrell Dep. [#24-6], at 19:20–23; Email [#24-15], at 1–3.) The email stated that he wanted to clarify his statement "about not returning next year as academic dean" and included the following paragraph:

> I met with Dr. Harrell and Ms. Reavis this week to discuss my position and the possibility of transferring to another position within UCISD. We discussed the possibility of me being a teacher next year or if another opportunity arose if I could be considered depending on the position. I do hope you sustain the positivity, academic, and non-academic supports (i.e., relationship building) to finish off the year strong. I regret for not explaining myself in detail yesterday in regards to the academic dean position.

---

[2] UCISD objected to this statement as hearsay. The objection is overruled because this opposing party's statement is not hearsay under Rule 801(d)(2) of the Federal Rules of Evidence.

7

(Email [#24-15], at 3.)  Olan did not return to school again before his March 29, 2019 scheduled surgery.  (Reavis Aff. [#24-8], at ¶ 9.)  Dr. Harrell thereafter recommended Olan's termination.  (Harrell Dep. [#24-6], at 12:6–14:13, 17:10–25.)

On April 15, 2019, UCISD's Board of Trustees voted to terminate Olan's contract at the end of his one-year contract term.  (Reavis Aff. [#24-8]], at ¶ 10; Harrell Dep. [#24-6], at 8:4-25; Ltr. [#24-16], at 1–2; Formal Notice [#24-18], at 1.)  Olan did not file a grievance under UCISD's grievance policy, and on April 19, 2019, was given written notice of the Board's vote to terminate his contract.  (Reavis Aff. [#24-8], at ¶ 10.)  When questioned as to the reason for Olan's termination, Dr. Harrell stated that "it was in the best interest of the district to recommend termination of your probationary contract for reasons including but not limited to your inability to work with supervisors and co-workers."  (Olan Decl. [#27-1], at ¶ 22; Email [#27-14], at  3–4.)

Olan received a performance evaluation for the 2018-2019 school year shortly thereafter, which rated him as "clearly outstanding" or "exceeds expectations" in all areas, including the area of "maintaining a positive and effective relationship with supervisors" and "adhering to ethical and legal standards and model behavior that is professional and responsible."  (Olan Decl. [#27-1], at ¶ 23; Performance Evaluation [#27-5], at 1–11.)

Olan filed a Charge of Discrimination on August 7, 2019, alleging that he was terminated while on FMLA leave and that his termination was discrimination on account of his disability.  (EEOC Charge [#24-7], at 1–2.)  In response to the charge, Dr. Harrell provided a new explanation for Olan's termination—making false statements at a faculty meeting and failing to hold an emergency meeting to remedy his misrepresentations.  (EEOC Resp. [#27-15], at 2–3.)  UCISD continues to maintain that it terminated Olan's contract because he lied to the staff at

UHS, which allegedly caused anxiety, stress, and confusion on the UHS campus, and failed to remedy those misstatements as directed.  (Harrell Dep. [#24-6], at 13:5–14:13, 17:10–23.)  Olan timely filed this suit on April 20, 2020.  (Compl. [#1].)

### V.  Analysis of Summary Judgment Motion

Olan alleges that UCISD discriminated against him on account of his disability in violation of the ADA and the Texas Labor Code when it terminated his employment.  (Compl. [#1], at ¶¶ 18–24.)  Olan also claims that UCISD interfered with his right to FMLA leave by terminating his employment for no valid reason prior to his completion of his FMLA leave.  (*Id.* at ¶¶ 25–30.)  Olan further alleges that his termination was unlawful retaliation for requesting and taking FMLA-qualifying leave in violation of the ADA, the Texas Labor Code, and FMLA. (*Id.*)  UCISD seeks summary judgment on all of Olan's claims.  The Court will deny the motion for the reasons that follow.

**A.      There is a genuine dispute of material fact as to Olan's FMLA claim.**

The FMLA permits an employee to take up to twelve weeks of medical leave for their own serious medical condition or for the care of a family member with a serious medical condition.  29 U.S.C. § 2612(a)(1).  The FMLA provides, in relevant part, that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" provided by the FMLA.  *Id.* at § 2615(a)(1).  The FMLA also makes it unlawful for an employer to discharge or retaliate in any other manner against an individual for opposing the employer's unlawful FMLA practices.  *Id.* at § 2615(a)(2).

UCISD interprets Olan's Complaint as asserting both a claim of FMLA interference and a claim of FMLA retaliation and argues it is entitled to summary judgment on both claims. UCISD argues that Olan cannot show that UCISD interfered with his FMLA rights because he

received all of the 12 weeks of unpaid leave to which he was entitled.  UCISD argues that Olan cannot show that UCISD retaliated against Olan in violation of the FMLA because the record demonstrates that Olan was terminated due to his own actions and misconduct regarding his alleged misstatements at the March 20, 2019 faculty meeting.

In response to UCISD's motion, Olan clarifies that his FMLA claim is premised solely on his allegation and supporting evidence that UCISD discharged him in retaliation for engaging in his FMLA-protected activities.  Olan's response acknowledges that he cannot simultaneously pursue claims of FMLA interference and FMLA retaliation based on the same termination, *see Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 351 (5th Cir. 2013) (Elrod, J., concurring). (Resp. [#27], at 12 & n.3.)  Because Olan has withdrawn his FMLA interference claim, the Court only addresses his claim of FMLA retaliation.

In order to establish a *prima facie* case of retaliation under the FMLA, the employee must show the following:   (1) he was protected under the FMLA; (2) he suffered an adverse employment action; and (3) the adverse decision was made because he sought protection under the FMLA. *Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006) (applying *McDonnell Douglas* burden-shifting framework); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Once an employee establishes a *prima facie* case of retaliation, the burden shifts to the employer to prove that the adverse decision was made for some other non-retaliatory reason.  *Hunt v. Rapides Healthcare Sys.*, 277 F.3d 757, 768 (5th Cir. 2001), *abrogated on other grounds by Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702 (5th Cir. 2016); *see also* 29 C.F.R. § 825.216(a) (2006).  Thereafter, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the reasoning presented by the defendant is, in fact, pretext for retaliation.  *Hunt*, 277 F.3d at 768.

The Fifth Circuit has previously recognized that the traditional *McDonnell Douglas* framework does not always apply in FMLA retaliatory discharge cases.   *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005).  A mixed-motive framework applies to FMLA retaliatory discharge cases in which an employee concedes that discrimination was not the sole reason for discharge but argues that discrimination was nonetheless a motivating factor. *Id.*  Under the modified burden-shifting framework recognized in *Richardson*, a plaintiff still must make a *prima facie* case of retaliation, and the employer must still articulate a legitimate, non-retaliatory reason for the adverse employment action, but the employee may rebut the stated reason by offering sufficient evidence to create a genuine issue of material fact either that (a) the employer's proffered reason is pretext for unlawful retaliation, or (b) the employer's reason, although true, is but one of the reasons for its conduct, another of which is retaliation.  *Id.*  If the employee proves that discrimination was a motivating factor in the employment decision, the burden again shifts to the employer, this time to prove that it would have taken the same action despite the retaliatory animus.  *Id.*

Two Supreme Court cases decided after *Richardson* raise the question of the continuing validity of its holding.[3]  Yet the Fifth Circuit has repeatedly declined to revisit *Richardson* and

---

[3] In 2009, the Supreme Court, engaging in a textual and structural analysis of the ADEA, held that the mixed-motive framework does not apply to age discrimination claims, and ADEA plaintiffs must prove but-for causation.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175–78 (2009).  Citing *Gross* and analyzing the text and structure of Title VII, the Supreme Court clarified that Title VII retaliation plaintiffs must also prove but-for causation and the mixed-motive framework only applies to status-based discrimination claims under Title VII.  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 349–51 (2013).  The Supreme Court also emphasized that permitting retaliation claimants to proceed under a mixed-motive framework could encourage gamesmanship, as poor performers anticipating an adverse action could engage in protected activity and make it very risky for the employer to discipline them.  *Id.* at 358–59. Much of the Supreme Court's textual and structural analysis in these two cases could apply in the FMLA context.  And *Nassar*'s concern about a lower causation standard in the Title VII retaliation context applies with equal force in the FMLA context.

clarify whether the mixed-motive framework continues to apply in the FMLA context or whether an FMLA plaintiff must prove but-for causation, as in cases of Title VII retaliation.  *See Campos v. Steves & Sons, Inc.*, No. 19-51100, 2021 WL 3674036, at *11 n.4 (5th Cir. Aug. 19, 2021) (applying *Richardson* and noting just last month that the question of whether the mixed-motive framework applies in FMLA cases remains an "unaddressed issue" in this Circuit).  *Richardson* therefore remains binding law in the Fifth Circuit.  Accordingly, after establishing his *prima facie* case, to survive summary judgment Olan need only produce evidence that could support a finding that his protected activity was one of the reasons for his termination, even if not the sole reason for the adverse employment decision.

UCISD concedes that it is an employer within the meaning of the FMLA and that Olan was an eligible employee under the FMLA at the time he requested leave for his serious medical condition.  (Compl. [#1], at ¶ 27; Answer [#4], at ¶ 27.)  It is undisputed that UCISD had approved Olan's requested FMLA leave at the time of his termination; that Olan was on intermittent FMLA leave when he left work early on March 20, 2019; and that Olan had begun his continuous FMLA leave when he suffered the adverse employment action at issue—his termination—on April 15, 2019.  (Compl. [#1], at ¶ 9; Answer [#4], at ¶ 9; Olan Dep. [#24-3], at 40:2–41:16; Olan Decl. [#27-1], at ¶ 7; Reavis Aff. [#24-8], at ¶ 4.)  Thus, the only element of Olan's FMLA retaliation claim in dispute is causation.

When evaluating whether an adverse employment action was causally related to the FMLA-protected activity at issue for purposes of evaluating whether a plaintiff has established a *prima facie* case of retaliatory discharge, this Court considers the "temporal proximity" between the FMLA leave and the termination.  *Mauder*, 446 F.3d at 583.  Here, the summary judgment record establishes that Dr. Harrell's decision to recommend Olan's termination to the School

Board was made in early April 2019, just two months after Olan advised UCISD that he was having surgery on March 28 and would need a three-month leave of absence, and mere weeks after he began his continuous FMLA leave.  This close timing is sufficient to raise a fact issue on causation, particularly because Olan was terminated while on approved FMLA leave.  *See, e.g.*, *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020) (noting that six-week time period between exercise of FMLA-protected activity and adverse employment action is "sufficiently close" in time to establish causality but five-month lapse is "not close enough, without other evidence of retaliation, to establish the 'causal connection' element of a prima facie case of retaliation"); *Mauder*, 446 F.3d at 583 (citing with approval district court's reasoning that causal connection exists between FMLA leave and termination where "plaintiff was terminated while on FMLA leave"); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (citing with approval a district court noting that "a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes").  Olan has therefore established a *prima facie* case of FMLA retaliation.

Olan has also raised a fact issue as to the real reason for his termination by proffering evidence that UCISD's stated reason for his termination was pretext for unlawful retaliation.  Because Olan prevails under the traditional *McDonnell Douglas* framework, the Court need not address whether he has also raised a fact issue under the mixed-motive framework approved by the Fifth Circuit in *Richardson*.

First, Olan directs the Court to the inconsistencies in the summary judgment record regarding UCISD's stated reason for his termination.  The record demonstrates that Dr. Harrell initially told Olan that he was terminated for his "inability to work with co-workers and supervisors."  (Email [#27-14], at 3–4.)  Yet, soon after his termination, Olan received a

glowing performance review for the 2018–2019 school year and was rated as exceeding expectations in the area of his relationships with his supervisors and in modeling professional behavior with UHS faculty.  (Performance Evaluation [#27-5], at 1–11.)  Several months later, in response to Olan's EEOC charge and again at his deposition, Dr. Harrell provided a different explanation for Olan's termination, stating that Olan was fired for (1) falsely telling faculty that he was not being offered a contract and would not be returning as Academic Dean the following year; and (2) failing to hold an emergency meeting with the faculty on March 21 to remedy this misrepresentation.  (Harrell Dep. [#27-3], at 12:24–13:4; EEOC Resp. [#27-15], at 2–3.)

A plaintiff may establish pretext by showing the employer's proffered explanation for the adverse employment action is "unworthy of credence."  *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).  An employer's shifting reason for termination and inconsistent explanations for the reasons behind the adverse employment action are evidence from which a factfinder could infer an explanation is not trustworthy and therefore evidence of pretext.  *Gee v. Principi*, 289 F.3d 342, 347–48 (5th Cir. 2002).  A factfinder could find, based on the summary judgment record in this case, that Dr. Harrell's inconsistent reasons for his recommendation of Olan's termination are not worthy of credence and thereby infer a discriminatory motive, especially against the backdrop of Plaintiff's laudatory performance reviews.   In the Fifth Circuit, "[e]vidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's *prima facie* case, is likely to support an inference of discrimination even without further evidence of defendant's true motive."  *Laxton*, 333 F.3d at 578.

Finally, Olan has provided sworn testimony refuting UCISD's description of the March 19 meeting, particularly UCISD's contention that Olan told Dr. Harrell and Ms. Reavis at the

meeting that he did not want to work under Mr. Rodriguez and that he called the meeting to request a transfer of position.  (Olan Dep. [#24-3], at 37:3–20; Olan Decl. [#27-1], at ¶ 12.) When questioned at his deposition, Dr. Harrell conceded that he was unaware of any conflict between Olan and Mr. Rodriguez and that Olan's only complaint about Mr. Rodriguez was that he was not doing a good job, not that Olan could not get along with him professionally or personally.  (Harrell Dep. [#27-3], at 25:11.)

Even if a factfinder were to adopt UCISD's description of the March 19 meeting (that Olan affirmatively requested the transfer and the parties tentatively agreed to Olan returning as a teacher the following year), it would be reasonable for Olan to assume that he was unlikely to return as UHS's Academic Dean after his FMLA leave, making his statements at the March 20 faculty meeting far from "blatant misrepresentations," as UCISD characterizes them in its motion.  Additionally, UCISD does not present evidence to support its position that Olan's announcement caused the stress, anxiety, and confusion described repeatedly in UCISD's motion.  For instance, UCISD has not presented any evidence of meeting attendee complaints to HR or administrators.  Yet Olan proffered several statements by faculty members who attended the meeting, none of which paints his announcement in this light or describes stress, anxiety, or confusion.[4]  (Mireles Decl. [#27-9], at 2; Mahler Dec. [#27-10], at 2.)   A reasonable factfinder could conclude based on the summary judgment record that Olan's remarks at the March 20 staff meeting represented his best understanding of his employment status and were an attempt to be truthful with his colleagues prior to taking his approved FMLA leave, further undermining UCISD's characterization of the events leading up to and the true reasons for Olan's termination.

---

[4] UCISD objects to these statements as hearsay, but the Court has not relied on these statements as proof of the truth of the matter asserted (what was stated at the meeting).  *See* Fed. R. Evid. 801(c).  Accordingly, the Court will not deny UCISD's motion to strike on this evidentiary issue.

In summary, the record contains competing versions of the same events and multiple, inconsistent explanations for the employer's actions.  The jury's resolution of these fact issues will bear on the factfinders' conclusions as to the real reason for Olan's termination.  Olan has proffered evidence in support of his FMLA retaliation claim that raises a genuine dispute of material fact as to whether UCISD's stated reason for the adverse employment action at issue was pretext for unlawful retaliation.  UCISD is not entitled to summary judgment on this claim.

**B.**      **There is a genuine dispute of material fact as to Olan's ADA and Texas Labor Code claims.**

The ADA prohibits employers from discriminating against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, the advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  Discrimination under the ADA includes both a failure to accommodate a disability and disparate treatment because of a disability.  *E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 703 n.6 (5th Cir. 2014).

Chapter 21 of the Texas Labor Code similarly makes it unlawful for an employer "to fail or refuse to make a reasonable workplace accommodation to a known physical or mental limitation of an otherwise qualified individual with a disability . . . unless [the employer] demonstrates that the accommodation would impose an undue hardship on the operation of the business."  Tex. Lab. Code § 21.128(a).  The purpose of Chapter 21 of the Labor Code is to implement the policies of the ADA and Title VII.  Tex. Lab. Code § 21.001(1), (3).  Chapter 21 parallels the language of the ADA, and Texas courts follow ADA law in evaluating such claims. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285–87 (5th Cir. 2004).

To establish a *prima facie* claim of disability discrimination under the ADA and Chapter 21, Olan must establish that (1) he has a disability; (2) he was qualified for his position; and (3)

he was subject to an adverse employment decision on account of his disability.  *E.E.O.C.*, 773 F.3d at 697.  To establish a *prima facie* claim of ADA and Chapter 21 retaliation, Olan must establish that (1) he participated in an activity protected by the ADA; (2) he suffered an adverse employment action at the hands of UCISD; and (3) a causal connection exists between the protected activity and the adverse employment action.  *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999).

Requesting a reasonable accommodation for a disability, such as a medical leave of absence to treat a disability, is protected activity under the ADA.  *Delavel v. PTech Drilling Tubulars, LLC*, 824 F.3d 476, 481 (5th Cir. 2016); *Tabatchnik v. Contintental Airlines*, 262 Fed. App'x 674, 676 (5th Cir. 2008).  Discrimination and retaliation claims under the ADA are analyzed using the *McDonnell Douglas* burden-shifting framework described in conjunction with Olan's FMLA claim.  *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 836 (5th Cir. 2020).

UCISD argues that it is entitled to summary judgment on both of these claims because the record definitively establishes that Olan misinformed UHS faculty that his contract was not being renewed and he failed to hold the emergency meeting to remedy his misrepresentations as directed by Dr. Harrell and Ms. Reavis.  According to UCISD, there is no evidence that it was anything but his "disruptive and unprofessional conduct" on March 20–21, 2019, that caused his termination.  UCISD essentially makes the same arguments as it does with respect to Olan's FMLA retaliation claim—that Olan cannot prove a causal connection between his disability or FMLA leave on the summary judgment record.  For the same reasons already stated regarding Olan's FMLA claim, the Court disagrees.

Olan has presented the Court with evidence from which a reasonable factfinder could infer a causal connection between his disability and FMLA leave and his termination has

therefore established a *prima facie* case of ADA discrimination and retaliation. Furthermore, Olan has proffered evidence that could give rise to a reasonable inference UCISD's stated reason for his termination was pretext for discrimination or retaliation. UCISD has not established that it is entitled to summary judgment on Olan's ADA and Texas Labor Code claims as a matter of law.

## VI.  Conclusion

Having considered UCISD's motion, the response and reply thereto, as well as the entire summary judgment record in this case, the Court finds that genuine issues of material fact preclude awarding Defendant summary judgment on any of Plaintiff's claims.

**IT IS THEREFORE ORDERED** that Defendant Uvalde Consolidated Independent School District's Motion for Summary Judgment [#24] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Portions of Plaintiff's Evidence [#28] is **DENIED** and its evidentiary objections are **DENIED** as set forth herein. In all other respects, the Motion to Strike [#28] is **DISMISSED AS MOOT**.

SIGNED this 13th day of September, 2021.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE

18